UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMMY KORTHALS,

    Plaintiff,                                          Case No. 17-10319

v.                                                    HON. GEORGE CARAM STEEH

COUNTY OF HURON and
BRADLEY STROZESKI,
in his individual and official capacity,

    Defendants.
_____/

OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. 29) AND
DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT (DOC. 23)

      Before the court is Defendants' motion for summary judgment and Plaintiff's motion to amend complaint, which have been fully briefed. The court heard oral argument on January 10, 2019. For the reasons explained below, Defendants' motion is granted in part and denied in part, and Plaintiff's motion is denied.

## BACKGROUND FACTS

      Plaintiff Tammy Korthals filed this action against Huron County and Deputy Sheriff Bradley Strozeski after falling and injuring herself inside the county jail. On October 12, 2014, Plaintiff was arrested for driving under

the influence of alcohol. At the time she was arrested, she had stopped her vehicle in a parking lot and had switched places with her sister, the other occupant. Caseville police officers Matthew Clark and Anthony Jobes arrived at the scene in response to an erratic driving complaint, as did Deputy Strozeski. Officer Clark noted that Plaintiff was "stumbling and swaying" after getting out of the vehicle and he had her "lean against the vehicle so she would not fall over." Pl.'s Ex. Q. After a search of Plaintiff's vehicle, officers found three empty beer cans, an empty pint of vodka, and a partially consumed pint of vodka.

Deputy Strozeski, who noted that Plaintiff's pants and belt were undone, conducted a field sobriety test of Plaintiff. He reported that she smelled strongly of alcohol, her eyes were bloodshot and watery, and her speech was slurred. Pl.'s Ex. G. Plaintiff was unable to recite the alphabet from C to W or count back from 89 to 67. Plaintiff was also unable to keep her balance while attempting to walk a straight line. *Id.* At 6:40 p.m., Strozeski performed a breathalyzer test on Plaintiff, which showed a .346 blood alcohol content, an extremely high level. Thinking that there was something wrong with his device, Strozeski had Officer Clark perform another breathalyzer test on Plaintiff, which registered .357. The officers were shocked by the high scores; Deputy Strozeski concluded that Plaintiff

"must use alcohol quite frequently to still be walking and talking at that point." Pl.'s Ex. H at 33-34.

After conducting the sobriety tests, Deputy Strozeski arrested Plaintiff for driving under the influence. He cuffed her hands behind her back and placed her in the back of his patrol vehicle. Plaintiff does not remember anything further because the "alcohol kicked in pretty good by then" and she "started to black out." Pl.'s Ex. A at 34-36.

Deputy Strozeski transported Plaintiff to the hospital, where she was given a blood alcohol test. The doctor noted that Plaintiff "walked in of her own power"; that "there is no visible swaying or swerving in her gait"; "she is alert and oriented x3"; and "she is able to converse with us without any difficulty." Pl.'s Ex. R. When the results were returned, the doctor informed Strozeski that Plaintiff's blood alcohol level was .41. When Strozeski asked if Plaintiff would be released, the doctor informed him that "he has seen cases like this numerous times and she would be medically cleared . . . to be released." Pl.'s Ex. H at 17. The doctor noted that "I see no reason to keep her in the hospital at this point, given that she is ambulatory with no apparent ataxia or difficulty. She is fully functionally independent, though intoxicated, and will be in the custody of the Huron County Jail. She is released into the custody of the officers in stable but intoxicated condition."

Pl.'s Ex. R.

After speaking with the doctor, Deputy Strozeski believed that Plaintiff was "stable and able to go to jail" and that she could walk on her own. *Id.* Strozeski understood, however, that someone with such a high blood alcohol level "could possibly hurt themselves" and "might not be able to care for themselves." *Id.* at 18.

Deputy Strozeski walked Plaintiff out to his patrol car and handcuffed her before placing her in the vehicle. At approximately 9:20 p.m., they arrived at the jail. Still handcuffed, Plaintiff slowly exits the vehicle without assistance, although she leans abnormally forward in order to do so. *See* Def.'s Ex. L (jail video). Plaintiff appears steady as she makes her way through the garage to the door. As she walks down the hall, however, she appears unsteady, crossing one foot in front of the other at one point and walking with her feet moving from side to side. During this time, Strozeski is walking ahead of her. As he walks up a set of steps up to the jail, Plaintiff follows and falls backward from the second step to the cement floor, hitting her head. Strozeski went to Plaintiff's aid and called an ambulance, which transported Plaintiff to the hospital. Plaintiff's injuries included a subdural hematoma (brain injury) and orbital (eye socket) fracture.

Plaintiff's complaint alleges the following causes of action: Count I, violation of Eighth and/or Fourteenth Amendment rights, 42 U.S.C. § 1983; Count II, gross negligence; Count III, willful and wanton misconduct; and Count IV, municipal liability against Huron County under § 1983. Plaintiff agrees to the dismissal of Count III. Defendants seek summary judgment on the remaining claims.

## LAW AND ANALYSIS

I. Summary Judgment Standard

Summary judgment is appropriate when there is "no genuine issue as to any material fact" and defendants are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law," the court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Id.* at 251–52, 255.

II. Fourteenth Amendment Claim

Under the Eighth Amendment, a prisoner has a right to be free from

cruel and unusual punishment. Although the Eighth Amendment applies only to individuals who have been convicted and sentenced, pretrial detainees like Plaintiff receive the same rights under the Fourteenth Amendment. *Richko v. Wayne Cty.*, 819 F.3d 907, 915 (6th Cir. 2016); *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018). The Sixth Circuit has "historically analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Richmond*, 885 F.3d at 937. The Eighth Amendment prohibits the use of excessive force, requires "humane conditions of confinement," including adequate medical care, and requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

For a claim alleging the failure to prevent harm, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834.[1] In addition to this objective component, a plaintiff must also satisfy the subjective component of the test: that the prison official knew of and disregarded "an excessive risk to inmate health

---

[1] Although Defendants frame the issue as deliberate indifference to a serious medical need, it is appropriately viewed as deliberate indifference to Plaintiff's health and safety, also protected by the Fourteenth Amendment. *See Carroll v. City of Quincy*, 441 F. Supp.2d 215, 220-21 (D. Mass. 2006).

or safety." *Id.* at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[2] *Id.*

Plaintiff has provided sufficient evidence that she was detained under conditions posing a substantial risk of serious harm. She was highly intoxicated, appeared to have some balance issues based upon the video, and was handcuffed with her hands behind her back while walking and climbing stairs in the jail. Under these circumstances, there was a substantial risk that Plaintiff could pass out or stumble, be unable to break her fall or make use of the handrail to prevent it, and seriously injure herself. *See Carroll v. City of Quincy*, 441 F. Supp.2d 215, 221 (D. Mass. 2006) ("Given that Carroll was intoxicated and had demonstrated difficulty standing without assistance, the decision to place him in a holding area with his hands cuffed behind his back put him in a situation where there was a substantial risk of harm.").

Plaintiff has also provided sufficient evidence that Deputy Strozeski

---

[2] It is not clear whether the subjective component of the test survives *Kingsley v. Hendrickson*, 135 S.Ct. 2466 (2015), which held that a pretrial detainee's excessive force claim under the Fourteenth Amendment need only meet the objective component. Although the circuits are split, the Sixth Circuit has yet to consider whether *Kingsley* "similarly abrogates the subjective intent requirement of a Fourteenth Amendment deliberate indifference claim." *Richmond*, 885 F.3d at 938 n.3. Because the parties have not briefed the issue and because the court finds that it is not dispositive of the issues presented, the court will not address it at this time.

knew of and disregarded the risk. Strozeski was aware of Plaintiff's high level of intoxication and her blood alcohol content, which was .41 at the hospital. Defendants argue that Strozeski was not aware of the substantial risk of harm because Plaintiff was able to walk without assistance and was medically cleared by the doctor. Def.'s Ex. F at 26. Given Plaintiff's extremely high blood alcohol content, however, the risk was "arguably, quite obvious." *Carroll*, 441 F. Supp.2d at 222 (detainee with blood alcohol content of .37). Strozeski agreed that someone with a .41 blood alcohol level "could possibly hurt themselves" and "might not be able to care for themselves." Def.'s Ex. F at 18. The jail video shows that Plaintiff was not completely steady on her feet as she made her way down the hall toward the stairs. Strozeski did not take any precautionary measures when escorting Plaintiff down the hall and mounting the stairs ahead of her, leaving her to her own devices. Plaintiff has raised a genuine issue of material fact regarding whether Strozeski had the requisite knowledge of a substantial risk and failed to reasonably respond to it. *See Farmer*, 511 U.S. at 842 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very

fact that the risk was obvious.") (citation omitted).

### III. Qualified Immunity

Strozeski contends that he is entitled to qualified immunity, which shields officials from civil liability if their conduct "does not violate clearly established rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  In determining whether a defendant is entitled to qualified immunity, the court analyzes "(1) whether, considering the allegations in the light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Richmond*, 885 F.3d at 947 (citation omitted).  As discussed above, Plaintiff has alleged sufficient facts to support a finding that her Fourteenth Amendment rights were violated.  Therefore, the court must consider whether the right was clearly established "such that a reasonable official would have understood that his conduct violated the right." *Comstock v. McCrary*, 273 F.3d 693, 711 (6th Cir. 2001).  "As the Supreme Court has instructed, we need not find a case in which 'the very action in question has previously been held unlawful,' but, 'in the light of pre-existing law[,] the unlawfulness must be apparent.'" *Id.* at 711 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

It is well settled that a prison official's "'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer*, 511 U.S. at 828. Because there is a question of fact regarding whether Strozeski was aware of the risk to Plaintiff and disregarded it, he is not entitled to qualified immunity. *See Carroll*, 441 F. Supp.2d at 223. "That is because a reasonable officer could not believe that his actions comported with clearly established law if he also understood that there was an excessive risk to the plaintiff to which he did not adequately respond. Conduct that is deliberately indifferent to an excessive risk to [the plaintiff] cannot be objectively reasonable conduct." *Id.*

IV. Municipal Liability

Plaintiff also asserts a claim against Huron County under § 1983, alleging that it failed to train officers or implement a policy regarding the handling of impaired inmates. In order to establish municipal liability under § 1983, a plaintiff must point to a municipal policy or custom that is behind the constitutional violation. *See Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658, 690 (1978). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited

to action for which the municipality is actually responsible." *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1117 (6th Cir. 1994) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986)).

"To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). Although Defendants argue that Plaintiff is required to show a pattern of constitutional violations in order to demonstrate deliberate indifference, Plaintiff may also show deliberate indifference by establishing a "failure to provide adequate training in light of foreseeable consequences that could result from a lack of instruction." *Id.* at 700-701.

Given that Huron County did not provide training to its officers or implement a policy regarding the handling of impaired inmates, Plaintiff has raised a question of fact regarding whether the training was adequate for the tasks performed. Plaintiff has also shown that it is foreseeable that officers will regularly deal with intoxicated or otherwise impaired inmates and that a failure to take precautions in moving such inmates could result in

a substantial risk of harm. This failure to train and/or implement a policy is closely related to Plaintiff's injury. Therefore, Plaintiff has raised a genuine issue of material fact regarding Huron County's liability under § 1983.

V. Gross Negligence

Plaintiff also raises a claim of gross negligence against Deputy Strozeski under Michigan law. To support this claim, Plaintiff must show that Strozeski engaged in "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." M.C.L. 691.1407(7)(a). Deputy Strozeski is entitled to immunity, however, unless his "conduct amounts to gross negligence that is the one most immediate, efficient, and direct cause of the injury or damage, i.e., *the* proximate cause." *Robinson v. City of Detroit*, 462 Mich. 439, 462 (2000) (holding that conduct that is merely "*a* proximate cause" of the injury is insufficient to overcome immunity). The Michigan Supreme Court has noted that this gross negligence exception to governmental immunity is "very narrow." *Beals v. Michigan*, 497 Mich. 363, 378 (2015).

Defendant contends that Deputy Strozeski was not *the* proximate cause of Plaintiff's injury, but rather her fall was caused by her extreme intoxication. In support of this argument, Defendant relies upon *Beals*, in which the court held that a lifeguard who failed to intervene to prevent a

drowning was entitled to governmental immunity because the lifeguard was not *the* proximate cause of the individual's death.  As the court explained,

> that Harman breached his duty does not necessarily entail that his inaction was the most direct cause of Beals's drowning. Indeed, Harman did not *cause* Beals's drowning; he merely failed to observe it happening and to attempt a rescue in response. That we can only speculate as to Beals's survival had Harman timely intervened further supports our conclusion that Harman's conduct was not the proximate cause of Beals's death.

*Beals*, 497 Mich. at 374.  Similarly, although Strozeski did not intervene (to the extent possible) to prevent Plaintiff's fall, his inaction cannot be said to be *the* proximate cause of her injury.

Moreover, other than to argue that Strozeski's failure to properly escort Plaintiff was the cause of her fall, Plaintiff does not directly respond to this argument, rendering it forfeited.  See *United States v. Huntington Nat. Bank*, 574 F.3d 329, 331 (6th Cir. 2009) ("[C]onclusory allegations and perfunctory statements, unaccompanied by citations or some effort at legal argument," are insufficient to preserve an issue.)  For these reasons, the court will grant summary judgment in favor of Defendants on Plaintiff's gross negligence claim.[3]

---

[3] Defendants also argued that Plaintiff's gross negligence claim is time barred.  Because this claim fails on the merits, the court will not address Defendants' statute of limitations argument.

VI. Motion to Amend Complaint

Plaintiff seeks to amend her complaint to add a state law loss of consortium claim on behalf of her husband, Kelly Korthals. As discussed above, in order to support a state tort claim against a governmental employee, Plaintiff must establish that an exception to governmental immunity applies, such as the gross negligence exception. *See* M.C.L. 691.1407(2). Because the court has determined that Plaintiff cannot support a gross negligence claim against Deputy Strozeski, and Plaintiff has not articulated any other exception to immunity, the court will deny Plaintiff's motion to amend her complaint as futile. *See* M.C.L. 691.1407(1)(governmental agency immune from tort liability); *Newburgh/Six Mile Ltd. P'ship II v. Adlabs Films USA, Inc.*, 724 F. Supp. 2d 740, 752 (E.D. Mich. 2010), *aff'd*, 483 F. App'x 85 (6th Cir. 2012) (amendment futile if it could not survive pending summary judgment motion).

CONCLUSION

Therefore, IT IS HEREBY ORDERED that Defendants' motion for summary judgment (Doc. 29) is GRANTED IN PART as to Counts II and III and DENIED IN PART as to Counts I and IV.

IT IS FURTHER ORDERED that Plaintiff's motion to amend complaint (Doc. 23) is DENIED.

Dated: January 10, 2019

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on January 10, 2019, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk